UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LOREN SOLOMON,                                    )
                                                  )
                                                  )
                                                  )
                   Plaintiff                      )
                                                  )   CASE NO: 1:12-CV-07940-CM-MHD
v.                                                )
                                                  )
ALLIED INTERSTATE, LLC, f/k/a ALLIED              )
INTERSTATE, INC.,                                 )
                                                  )
                   Defendant                      )
_____ )

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S PETITION FOR
ATTORNEY'S FEES AND COSTS

BY: KIMMEL & SILVERMAN, P.C.

/s/ Craig Thor Kimmel
Craig Thor Kimmel
1001 6th Avenue, Suite 12
New York, NY 10018
Phone: (800) 668-3247
Fax: (800) 863-1689
Email: kimmel@creditlaw.com

# TABLE OF CONTENTS

I.    Background ........................................................................................1

      A.    Factual and Procedural History of Case ......................................1

      B.    Fees Sought by Plaintiff ............................................................3

II.   Argument............................................................................................6

      A.    The plain language of the FDCPA mandates that Plaintiff is entitled to
            attorneys' fees and costs. ..........................................................6

      B.    Public policy supports an award of attorneys' fees and costs to Plaintiff. ...6

      C.    An award of attorneys' fees and costs under the FDCPA is to be
            based on actual time expended, and not the amount of recovery. ...............7

            1.    The time and labor required. .........................................9

            2.    The skill requisite to perform the legal services properly, and
                  The experience, reputation and ability of the attorneys. ...............10

            3.    The customary fee for like work in the community. ....................11

            4.    Whether the fee is fixed or contingent. .........................17

            5.    The amount involved and the results obtained.............................17

            6.    Awards in similar cases.................................................20

      D.    A "reasonable paying client" would pay the attorneys fees requested
            by Plaintiff's counsel in this case. ............................................20

      E.    Plaintiff set forth amounts billed with specificity. ......................21

      F.    Plaintiff is entitled to additional fees and costs. .......................22

      G.    Plaintiff requests reimbursement for costs expended. ...............22

III.  Conclusion............................................................................................22

## TABLE OF AUTHORITIES

*Alexander v. NCO Financial Systems, Inc.*, 2011 WL 2415156
(E.D. Pa. June 16, 2011) ....................................................................10

*Amaprop Ltd. v. Indiabulls Fin. Services Ltd.*, 10 CIV. 1853 (PGG),
2011 WL 1002439 (S.D.N.Y. Mar. 16, 2011) aff'd, 11-1291-CV,
2012 WL 1889417 (2d Cir. May 25, 2012) ..............................................14,16

*AOL Time Warner S'holder Derivative Litig.*, No. 02 Civ. 6302, 2009 U.S. Dist.
LEXIS 124372 (S.D.N.Y. Nov. 9, 2009) ..........................................14

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*,
522 F.3d 182 (2d Cir. 2007)...........................................................8,9,20

*Auscape v. Nat'l Geographic Soc'y,* No. 02 Civ. 6441, 2003 U.S. Dist. LEXIS 13846,
at *11 (S.D.N.Y. Aug. 8, 2003) ........................................................21

*Barile v. Allied Interstate, Inc.,*12-CV-916-LAP-DF (S.D.N.Y. Jan. 30, 2013) ..............12

*Blanchard v. Bergeron*, 489 U.S. 87, 93 (1989)...................................................8

*Blum v. Stenson*, 465 U.S. 886 (1984) .................................................11, 12,17

*Bonner v. Guccione*, No. 94 Civ. 7735 (DLC), 1997 U.S. Dist. LEXIS
11382, at *23(S.D.N.Y. Aug. 6, 1997) *vacated on other grounds*,
178 F.3d 581 (2d Cir. 1999) .............................................................15

*Brass v. NCO Financial Systems, Inc.*, 2011 WL 3862145 (E.D. Pa. July 22, 2011;
Report and Recommendation adopted on August 31, 2011) ..........................10

*Chalmers v. City of Los Angeles*, 796 F.2d 1205 (9th Cir. 1986) .....................17

*City of Riverside,* 477 U.S. 561, 576 (1986)..........................................17,18,19

*Creighton v. Emporia Credit Service, Inc.*, 981 F. Supp. 411 (E.D. Va. 1997) ...............18

*Creighton v. Emporia Credit Serv., Inc.*, 1998 U.S. Dist. Lexis 6589
(E.D. Va., 1998) …… .......................................................................18

*Cruz v. Local Union No.* 3, 34 F.3d at 1159 (2d Cir. 1994) .........................11,20

*David v. Sullivan*, 777 F. Supp. 212, 223 (E.D.N.Y. 1991) .............................21

*DeCurtis v. Upward Bound Intern, Inc.*, 09 Civ. 5378 (RJS), 2011 WL 4549412 (S.D.N.Y. Sep. 27, 2011) ........................................................................................13,16

*Diettrich v. Northwest Airlines*, 967 F.Supp. 1132, 1997 U.S. Dist. LEXIS 9071, *6-7 (E.D.Wis. 1997) *rev'd on other grounds* 168 F.3d 961 (7th Cir. 1999)....................9

*Evans v. Jeff D.*, 475 U.S. 717, 735 (1986) .......................................................................17

*Foti v. Commonwealth Fin. Systems, Inc.*, 424 F. Supp. 2d 643, 653 (S.D. N.Y. 2006)…….........................................................................................................6

*Gagne v. Maher*, 594 F.2d 336, 344 (2d Cir. 1979) ...........................................................22

*Graziano v. Walkeron*, 950 F. 2d 107, 113 (3d. Cir. 1991) ...........................................5,19

*Grove v. Huffman*, 262 Ill. App.3d 531, 539 (Ill. Ct. Ap. 1994) ........................................7

*Gusman v. Unisys Corp.*, 986 F.2d 1146, 1150 (7th Cir.1993) ........................................11

*Heng Chan v. Sung Yue Tung Corp.*, 2007 WL 1373118 at *5-6 (S.D.N.Y. May 8, 2007)..........................................................................................................16

*Henning v. Allied Interstate, Inc.*, 12 Civ. 1719 (AJP) (S.D.N.Y. August 9, 2012)..........13

*Hensley v. Eckhart*, 461 U.S. 424 (1983) ....................................................................8,17

*Hnot v. Willis Group Holdings Ltd.*, 2008 WL 1166309 at *3 (S.D.N.Y. Apr. 2, 2008)..16

*Imbeault v. Rick's Cabaret Int'l Inc.*, No. 08 Civ 5458, 2009 U.S. Dist. LEXIS 71562, *3-4 (S.D.N.Y. August 13, 2009) ......................................................................................8

*In re Marsh ERISA Litig.*, No. 04 Civ 8157, 2010 U.S. Dist. LEXIS 8325 (S.D.N.Y. Jan. 29, 2010) ......................................................................................................14

*Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974)....................8, 9

*J.S. Nicol, Inc. v. Peking Handicraft, Inc.*, No. 03 Civ 1548, 2008 U.S. Dist. LEXIS 82085, at *19-20 (S.D.N.Y. October 17, 2008) .........................................................16,21

*Lagana v. Stephen Einstein & Associates, P.C. et al*, 1:10-cv-04456-KMW –GWG (S.D.N.Y. June 25, 2012) ...................................................13

*Lochren v. County of Suffolk*, 344 Fed. Appx. 706, 709 (2d Cir. 2009) ...........................20

*Majcher v. Laurel Motors, Inc.*, 287 Ill. App. 3d 719, 732 (Ill. Ct. App. 1997)................7

*Miller v. Midpoint Resolution Group, LLC,* 608 F. Supp. 2d 389 (W.D. N.Y. 2009).........6

*Morgan v. Credit Adjustment Board*, 999 F. Supp. 803 (E.D. Va. 1998)........................18

*Morgan v. Credit Adjustment Board*, 1998 U.S. Dist. Lexis 8135 (E.D. Va. 1999) .........19

*Morin v. Modern Cont'l Constr. Co.*, No. 07 Civ. 4815, 2009 U.S. Dist. LEXIS 72525, at *8 (E.D.N.Y. July 1, 2009) ..............................................................21

*Morris v. Eversley,* 343 F.Supp.2d 234, 248 (S.D.N.Y.2004) ...........................................17

*Mugavero v. Arms Acres, Inc.,* 03 CIV.05724 (PGG), 2010 WL 451045, *5 (S.D.N.Y. Feb. 9, 2010) ........................................................................................13

*Nike, Inc. v. Top Brand Co.*, 00 CIV. 8179 (KMW) (RLE), 2006 WL 2946472 (S.D.N.Y. Feb. 27, 2006) *report and recommendation adopted sub nom. Nike, Inc. v. Top Brand Co., Ltd.*, 00 CV 8179(KMW)(RLE), 2006 WL 2884437 (S.D.N.Y. Oct. 6, 2006) ....................................................................................15

*Paschal v. Flagstar Bank, FSB*, 297 F.3d 431, 433 (6th Cir. 2002) ...................................9

*Posner v. Mitsubishi,* U.S.D.C., E.D. Pa. 95-CV-6099 ...................................................10

*Putnam Leasing Co. v. Fields*, No. 05 Civ. 141, 2007 U.S. Dist. LEXIS 58794, at *12 (E.D.N.Y. June 27, 2007) ........................................................................21

*Quaration v. Tiffany & Co.*, 166 F.3d 422 (2d Cir. 1999) .................................................19

*Reed v. A.W. Lawrence & Co.*, 95 F.3d 1170, 1183-84 (2d Cir. 1996) ...........................22

*Reiter v. Metro .Transp. Auth. of N.Y.* 01 Civ. 2762, 2007 U.S. Dist. LEXIS 71008, at *56 (S.D.N.Y. Sept. 26, 2007) ......................................................................22

*Reith v. Allied Interstate, Inc.,* 12-CV-04278-PKC (N.Y.S.D. Nov. 8, 2012)..................13

*Robinson v. City of New York*, No. 05 Civ. 9545 (GEL), 2009 U.S. Dist. LEXIS 89981, at *13 (S.D.N.Y. Sept. 29, 2009) ........................................................15

*Rodriguez ex rel. Kelly v. McLoughlin*, 84 F. Supp. 2d 417, 421 (S.D.N.Y. 1999) .........16

*Rozell v. Ross-Holst*, 576 F. Supp. 2d 527, 546 (S.D.N.Y. 2008) ....................................15

*Russell v. Equifax A.R.S.*, 74 F. 3d 30, 33 (2d Cir. 1996)....................................................7

*Ryan v. Allied Interstate, Inc.*, 12 Civ. 0526 (AJP) (S.D.N.Y. August 9, 2012) ...............13

*Sheehan v. Metro. Life Ins. Co.,* 450 F.Supp.2d 321, 328 (S.D.N.Y.2006).......................17

*Silberblatt v. Morgan Stanley*, No. 05 Civ 7569 (PKC), 2007 U.S. Dist. LEXIS
85895, at *20-22 (S.D.N.Y. Nov. 19, 2007)......................................................15

*Sidley Holding Corp, v. Ruderman*, 08 Civ. 2513 (WHP), 2010 WL 963416
(S.D.N.Y. March 15, 2012).............................................................................15, 17

*Skold v. Am. Int'l Group*, No. 96 Civ 7137 (HB), 1999 U.S. Dist. LEXIS 9209,
at *21, 23 (S.D.N.Y. June 18, 1999), *aff'd*, 205 F.3d 1324 (2d Cir. 2000) ....................16

*Smith v. Chapman*, 436 F. Supp. 58, 66 (W.D. Tex. 1977) ...............................................17

*Steinberg v. Nationwide Mut. Ins. Co.*, 612 F. Supp. 2d 219, 224
(E.D.N.Y. 2009)……… .......................................................................................15

*Stitsworth v. Ford Motor Company*, 1996 WL 67610 (E.D. Pa. 1996) ............................10

*Student Public Interest Research Group v. AT & T Bell Laboratories,*
842 F.2d 1436, 1449 (3d Cir.1988)................................................................10, 20

*Teng v. Metropolitan Retail Recovery*, 851 F. Supp 61, (E.D. N.Y. 1994) .......................6

*Tolentino v. Friedman*, 46 F. 3d 645, 651-652 (7th Cir. 1995) ...........................................12

*Trs. of Mason Tenders Dist. Council Welfare Fund v. Stevenson Contracting Corp.,*
2008 WL 3155122 at *11-12 (S.D.N.Y. June 19, 2008), *report & rec. adopted,*
2008 WL 2940517 at *3 (S.D.N.Y. July 29, 2008) ...........................................16

*United Steelworkers of America v. Philips Dodge Corp.*, 896 F.2d 403, 407
(9th Cir. 1990) ……….........................................................................................12

*VFS Financing, Inc. v. Pioneer Aviation, Inc.*, 08 Civ. 7655 (GBD) (AJP),
2009 WL 2447751, *4, *report and recommendation* (S.D.N.Y. August 11, 2009) .....14,16

*Vilkhu v. City of N.Y.,* No. 06-CV-2095, 2009 WL 1851019 at *6, 9
(E.D.N.Y. June 26, 2009) ..................................................................................13

*Williams v. NCO Financial Systems, Inc.*, 2011 WL 1791099
(E.D. Pa. May 11, 2011) ....................................................................................11

*Wise v. Kelly,* 2008 WL 482399 at *9-11 (S.D.N.Y. Feb. 21, 2008)................................16

*Withers v. Eveland*, 997 F. Supp. 738, 740 (E.D. Va. 1998) ............................................18

*Withers v. Eveland,* 998 F. Supp. 942 (E.D. Va. 1997) ....................................................18

*Yohay v. City of Alexandria Employees Credit Union*, 827 F.2d 967
(4th Cir. 1987)…………..................................................................................................18

*Zagorski v. Midwest Billing Services, Inc.*, 128 F.3d 1164 (7th Cir. 1997)......................19

15 U.S.C. §1692 *et seq.* ..............................................................................................1,6

15 U.S.C. §1692c(a)(3) ........................................................................................................2

15 U.S.C. §1692d ..................................................................................................................2

15 U.S.C. §1692d(5) ..............................................................................................................2

15 U.S.C. §1692e ...................................................................................................................2

15 U.S.C. §1692e(2)(A) ........................................................................................................2

15 U.S.C. §1692e(10) ............................................................................................................2

15 U.S.C. §1692f ...................................................................................................................2

15 U.S.C. §1692g(a) ..............................................................................................................2

15 U.S.C. §1692k ...............................................................................................................2,5

15 U.S.C. §1692k(a) ..............................................................................................................5

15 U.S.C. §1692k(a)(3)..........................................................................................................1

Federal Rule of Civil Procedure 54(d)(1) .........................................................................22

Pursuant to the terms of Defendant Allied Interstate, LLC f/k/a Allied Interstate, Inc.'s Offer of Judgment, Plaintiff, Loren Solomon, submits this Memorandum of Law in support of his Motion for an Award of Attorney's Fees and Costs in the amount of $3,968.00, as provided under 15 U.S.C. §1692k(a)(3).

## I.  BACKGROUND

### A.  FACTUAL AND PROCEDURAL HISTORY OF CASE

Beginning in November 2011, and continuing through March 2012, Defendant repeatedly and continuously contacted Plaintiff on his home and cellular telephones in its attempts to collect an alleged student debt. *See Docket Entry 1.* During that period of time, Defendant called Plaintiff, on average, two (2) to three (3) times a day. *See Id.* If Plaintiff did not answer Defendant's phone calls, Defendant would hang-up without leaving any message for Plaintiff, which made the telephone calls more harassing, as Plaintiff would hear his phone ring repeatedly. *See Id.* On more than one occasion, Plaintiff informed Defendant to stop calling his home telephone, but Defendant ignored Plaintiff's instructions and continued to call. *See Id.* Around November 2011, when Defendant called Plaintiff's home telephone, Plaintiff's wife answered the phone and informed Defendant to stop calling, but Defendant ignored these instructions and, again, continued to call. *See Id.*

In response to Plaintiff's repeated requests to send verification of the debt, Defendant's collector, who identified himself as "Jesse Babcock," refused to send verification until copies of Plaintiff's and his wife's pay stubs were sent to the collector as proof of income. *See Id.* Being ignorant of what the collector was entitled to, Plaintiff and his wife shared personal financial information with the collector, regarding monthly income. *See Id.* In response, Mr. Babcock claimed that Plaintiff should be able to make a monthly payment of $495.00 based upon income and threatened that if Plaintiff did not agree, the money would be taken out of his paycheck involuntarily. *See Id.* Mr. Babcock informed Plaintiff that it had been contracted by a

government agency to collect the student loan, creating the false impression that its actions were government-directed and/or endorsed. *See Id.* Further, it is believed that at the time Defendant threatened to garnish Plaintiff's wages, it did not have the intent to take the action that it threatened and/or the legal authority to take such action. *See Id.* Finally, within five (5) days of its initial conversation with Plaintiff, Defendant failed to send Plaintiff written notification of his rights to dispute the debt and/or request verification of the debt, as well as providing him with the name of the creditor and the amount of the debt. *See Id.*

As a result, frustrated and upset by Defendant's repeated efforts to collect this alleged debt, Plaintiff sought legal representation in or around March 2012. After conducting an assessment on March 13, 2012 and speaking with Plaintiff, Plaintiff's counsel determined it was able to assist Plaintiff. *See* Exhibit "A". A letter was sent to Defendant's representatives via electronic mail on March 13, 2012 advising Defendant to cease all communications with Plaintiff and to direct all future correspondence to Plaintiff's counsel. *See Id.* Plaintiff then filed the present lawsuit on October 24, 2012 alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §1692 *et seq.* *See* Docket Entry 1. The Complaint was fact specific, setting forth information about the efforts made by Defendant to collect this alleged debt, and indicated six (6) provisions of the FDCPA that were violated by the Defendant. Specifically, Plaintiff asserted that Defendant violated sections 1692d, 1692d(5), 1692e, 1692e(4), 1692f, and 1692g of the FDCPA. *See Id.* Thereafter, the parties actively engaged in the litigation of this matter. *See* Exhibit "A". Subsequently, Defendant issued its present Offer of Judgment. Plaintiff filed her acceptance on May 1, 2013. *See* Docket Entry 12. Defendant's May 1, 2013 Offer of Judgment provides in relevant part:

1. Defendant will allow judgment to be entered against it in the amount of One Thousand Dollars ($1,000.00), plus reasonable costs and attorneys' fees as recoverable by law and allowed by the Court.

*See Id.* This is an excellent result for Plaintiff as it totals the full statutory damage amount he would have been entitled to if this matter had proceeded to trial. The Offer also provides for Plaintiff to be paid reasonable attorney's fees and costs through the date of the Offer. As the parties were unable to resolve the issue of attorney's fees and costs, this issue remains outstanding. Hence, Plaintiff now files the present motion for his fees and costs.

### B. <u>FEES SOUGHT BY PLAINTIFF</u>

In the present Motion, Plaintiff seeks compensation for his reasonable fees and costs as provided for in Defendant's Rule 68 Offer of Judgment and 15 U.S.C. 1692k. Time was expended by five (5) attorneys, including partner, Craig Thor Kimmel, Senior Associates, Amy L. Bennecoff, Tara L. Patterson, and associates Joseph L. Gentilcore and Suzanne M. Pontious. Further, time was expended by paralegals Pete Keltz, Katelynn Fitti, Steve Hill and law clerk Lara Dellegrotti. The total amount billed by attorneys and paralegal staff at Kimmel & Silverman, P.C. totaled $3,353.00. *See* Exhibit "B". In addition, costs were expended for the filing of the complaint, PHVC, and service, totaling $615.00. *See Id.* Overall, Plaintiff seeks compensation in the amount of $3,968.00. *See Id.*

The reduced hourly rate for the services provided by partner Craig Thor Kimmel is $300.00[1] for the 3.4[2] hours of his billable time. Mr. Kimmel was admitted to practice law first in Pennsylvania in 1989 and admitted to New York in 1997. *See* Exhibit "C," Declaration of Craig Thor Kimmel. He has been admitted to a number of other Courts as reflected in the attached exhibits in support and is well known within the legal communities he practices in for having substantial success over more than 22 years in representing consumers. *See Id.*

With regard to this case, Mr. Kimmel's time was expended as with every Allied Interstate claim, beginning at the outset of the case and through completion. Mindful of concerns to be efficient and in an effort to keep fees and costs reasonably low, Mr. Kimmel properly employed

---

[1] Mr. Kimmel's usual billing rate is $425.00 per hour.
[2] The original hours Mr. Kimmel billed to this file, prior to any reductions, were 4.5 hours.

associates and staff within his practice to assist, choices which result in a lower bill of fees and costs presented for payment, saving Defendant money. In total for his time then, the reasonable attorney fees for services provided by Mr. Kimmel are $1,020.00[3]. *See* Exhibit "A," Plaintiff's counsel's invoice for services in this matter.

Following Mr. Kimmel, the services of his senior attorney Amy L. Bennecoff were necessitated, at her reduced hourly rate of $225.00[4], for 1.6[5] hours of reasonable billable time she expended. *See Id.* Ms. Bennecoff's activities involved conferring with Plaintiff and Defendant's counsel, collaborating with colleagues and staff within the firm to prevail in this matter. *See Id.* The reasonable attorney fee for the services provided by Ms. Bennecoff is $360.00[6]. *See Id.*

The legal services of senior attorney Tara L. Patterson were rendered at the reduced rate of $225.00[7] for a total of 3.8[8] hours of reasonably expended billable time. *See Id.* Ms. Patterson's time was reasonably spent preparing the Complaint in this matter, conferring with Plaintiff and defense counsel, reviewing discovery and gathering information from the Plaintiff. *See Id.* The reasonable fee for services provided by Ms. Patterson is $300.00[9]. *See Id.*

Next, the legal services of associate Joseph L. Gentilcore were rendered at the rate of $175.00[10] per hour for a total of 1.5[11] hours of reasonably expended billable time. *See Id.* Mr. Gentilcore spent his billable time conferring with defense counsel regarding discovery and

---

[3] Mr. Kimmel's fee, before reductions, was $1,912.50.
[4] Ms. Bennecoff's usual billing rate is $300.00 per hour.
[5] The original hours Ms. Bennecoff billed to this file, prior to any reductions, were 1.9 hours.
[6] Ms. Bennecoff's fee, before reductions, was $570.00.
[7] Ms. Patterson's usual billing rate is $255.00 per hour.
[8] The original hours Ms. Patterson billed to this file, prior to any reductions, were 4.2 hours.
[9] Ms. Patterson's fee, before reductions, was $855.00.
[10] Mr. Gentilcore's usual billing rate is $225.00 per hour.
[11] The original hours Mr. Gentilcore billed to this file, prior to any reductions, were 1.6 hours.

settlement.  *See Id.* The reasonable fee for services provided by Mr. Gentilcore is $262.50[12].
*See Id.*

Finally, the legal services of associate Suzanne Pontious were rendered at a rate of $175.00[13] per hour for a total of 0.9 hours of reasonably expended billable time.  *See Id.*  Ms. Pontious spent her billable hours revising the fee petition.  *See Id.*  The reasonable fee for services provided by Ms. Pontious is $157.50.[14]

The hourly rate for non-lawyer personnel at the firm includes services provided paralegal Katelynn Fitti (5.6[15] hours) at a reduced hourly rate of $100.00[16]; paralegal Pete Keltz (0.1 hours) at an hourly rate of $80.00; paralegal Jason Ryan (0.3 hours) at a reduced hourly rate of $100.00[17]; and law clerk Lara Dellegotti (1.0 hours) at an hourly rate of $100.[18]  Each expended their efforts for routine tasks[19] which vary little at this stage of the litigation and upon the complexity of the case.  Non-attorney time expended totals 7[20] hours, for a total combined amount for their services of $698.00[21].  *See* Exhibit "A".

Total court costs expended on the case total $615.00 for filing the complaint, service, and pro hac vice counsel.  *See* Exhibit "A".  Costs relating to copy charges, postage and telephone were expended on the file total more than $100, but are not being submitted for reimbursement in this case.

---

[12] Mr. Gentilcore's fee, before reductions, was $360.00.

[13] Ms. Pontious's usual billing rate is $225.00 per hour.

[14] Ms. Pontious's fee, before reductions, was $202.50.

[15] The original hours Ms. Fitti billed to this file, prior to any reductions, were 7.2.

[16] Ms. Fitti's usual billing rate is $165.00 per hour.

[17] Mr. Ryan's usual billing rate is $155.00 per hour.

[18] Ms. Dellegrotti's usual billing rate is $180.00 per hour.

[19] The Court should note that while these tasks may be routine, the tasks billed are not administrative in nature.  All entries for administrative tasks performed by paralegal staff have been omitted from the Plaintiff's counsel's invoice, attached hereto as Exhibit "A".

[20] The original non-attorney time billed to this file were 4.3 hours.

[21] Utilizing billing judgment certain billing entries were removed.  This amount reflects reduced fees for non-attorney time expended on this file.  The fee for non-attorney time, before reductions, was $1,425.50.

In sum, the total reasonable attorney fees and costs requested is $3,968.00.[22] *See Id.*

## II.   ARGUMENT

### A.   THE PLAIN LANGUAGE OF THE FDCPA MANDATES THAT PLAINTIFF IS  ENTITLED TO ATTORNEYS' FEES AND COSTS.

The Offer of Judgment specifically provides for Plaintiff to receive fees and costs in connection with the prosecution of this matter. *See* Docket Entry 12.  In addition, 15 U.S.C. § 1692k(a) provides in pertinent part:

> [A]ny debt collector who fails to comply with any provision of this subchapter with respect to any person **is liable** to such person in an amount equal to the sum of— * * * (3) in the case of any successful action to enforce the foregoing liability, **the costs of the action, together with a reasonable attorney's fee as determined by the court**.

15 U.S.C. §1692k(a) (emphasis added). "Given the structure of [15 U.S.C. §1692k], attorney's fees should not be construed as a special or discretionary remedy; rather, the Act mandates an award of attorney's fees as a means of fulfilling Congress's intent that the Act should be enforced by debtors acting as private attorneys general."  *Graziano v. Walkeron*, 950 F. 2d 107, 113 (3d. Cir. 1991); *Miller v. Midpoint Resolution Group, LLC,* 608 F. Supp. 2d 389 (W.D. N.Y. 2009) (holding that once a violation of the FDCPA is found, an award of attorney's fees and costs is mandatory); *Teng v. Metropolitan Retail Recovery*, 851 F. Supp 61, (E.D. N.Y. 1994) (noting that the structure of the fee shifting provision included in the FDCPA mandates attorney's fees as the means of fulfilling congressional intent that the act be enforced by private attorneys general).

Thus, the FDCPA mandates that the recovery of attorney's fees and costs in connection with successful prosecution of an action under the FDCPA is integral to the success of the policy goals underlying the FDCPA.  By virtue of the Offer of Judgment, Defendant has stipulated to submission of the attorney's fees and costs to the Court, if the parties could not resolve the matter by agreement.

---

[22] This amount includes only fees actually billed, not amounts voluntarily eliminated.  Total fees and costs in this amount, including tasks voluntarily eliminated, totaled $6,392.00.

**B. PUBLIC POLICY SUPPORTS AN AWARD OF ATTORNEYS' FEES AND COSTS TO PLAINTIFF.**

The FDCPA was enacted to eliminate abusive debt collection practices by debt collectors, to ensure those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses. *See* 15 U.S.C. § 1692. The fee shifting provision included in the FDCPA enables consumers to vindicate their personal rights while benefiting society in general, resulting in greater deterrence of fraudulent and deceptive business practices. *Russell v. Equifax A.R.S.*, 74 F. 3d 30, 33 (2d Cir. 1996); *Foti v. Commonwealth Fin. Systems, Inc.*, 424 F. Supp. 2d 643, 653 (S.D. N.Y. 2006). "[T]he purpose of the statutory fee award is to benefit the plaintiff by allowing the plaintiff to obtain counsel in order to pursue redress for relatively small claims." *Majcher v. Laurel Motors, Inc.*, 287 Ill. App. 3d 719, 732 (Ill. Ct. App. 1997). By providing the private bar with incentive to involve itself in consumer litigation through fee-shifting, the government is relieved of the costs of protecting consumers while insuring that consumers may still avail themselves of their statutory rights. Lacking a sufficient award of attorney's fees and costs, an entry of judgment for the consumer would not make the consumer whole, as the average consumer would be unable to pay his attorney's fees, creating a deterrent for private attorneys to pursue this type of action. Fee shifting provisions are put in place to remove the difficulty of obtaining counsel in pursuing claims which are relatively small compared to potential legal costs. *Grove v. Huffman*, 262 Ill. App.3d 531, 539 (Ill. Ct. Ap. 1994).

**C. AN AWARD OF ATTORNEYS' FEES AND COSTS UNDER THE FDCPA IS TO BE BASED UPON ACTUAL TIME EXPENDED, AND NOT THE AMOUNT OF RECOVERY.**

Enforcement of a plaintiff's rights under the FDCPA through the courts is prohibitively expensive. Awarding fees based upon actual time expended, rather than amount of recovery,

makes economically feasible the pursuit of remedies by consumers in state and federal courts.[23]

The U.S. Supreme Court has explained the calculation for an award of attorneys' fees:

> The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. The calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services.

*Hensley v. Eckhart*, 461 U.S. 424, 433 (1983); *see also Imbeault v. Rick's Cabaret Int'l Inc.*, No. 08 Civ. 5458, 2009 U.S. Dist. LEXIS 71562, *3-4 (S.D.N.Y. Aug 13, 2009).

In determining what a "reasonable fee" is the Second Circuit has held that "[t]he reasonable hourly rate is the rate a paying client would be willing to pay." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182 (2d Cir. 2007). Specifically, in *Arbor Hill*, the Second Circuit found that the familiar "lodestar" formula "has deteriorated to the point of unhelpfulness," and held that district courts should abandon the lodestar concept entirely and focus fee determinations on the "presumptively reasonable fee," which amounts to "what a reasonable, paying client would be willing to pay." *Id.* at 190.

In making this determination, the Second Circuit held that it was incumbent upon the district court to "step[] into the shoes of the reasonable, paying client," and "bear in mind all of the case-specific variables that we and other courts have identified as relevant to the reasonableness of attorneys' fees in setting a reasonable hourly rate." *Id.* at 184, 190. Among

---

[23] Analogous federal consumer protection statutes have likewise been interpreted in such manner. *See* S.Rep. 93-151 at 24 (stating "[i]t should be noted that an attorneys' fee is to be based on actual time expended rather than being tied to any percentage of the recovery"). Courts analyzing the fee shifting provision included in the federal Magnuson-Moss Warranty Act have noted: "In consumer protection as this, the monetary value of the case is typically low. If courts focus only on the dollar value and the result of the case when awarding attorney fees, the remedial purposes of the statutes in question will be thwarted. Simply put, if attorney fee awards in these cases do not provide a reasonable return, it will be economically impossible for attorneys to represent their clients. Thus, practically speaking, the door to the courtroom will be closed to all but those with either potentially substantial damages, or those with sufficient economic resources to afford the litigation expenses involved. Such a situation would indeed be ironic: it is but precisely those with ordinary consumer complaints and those who cannot afford their attorney fees for whom these remedial acts are intended." *Jordan v Transnational Motors, Inc.*, 537 N.W.2d 471 (Mich. 1995).

those factors cited by the Second Circuit that should be considered in calculating the appropriate attorneys' fee award are:

> [T]he complexity and difficulty of the case, the available expertise and capacity of the client's other counsel (if any), the resources required to prosecute the case effectively (taking account of the resources being marshaled on the other side but not endorsing scorched earth tactics), the timing demands of the case, whether the attorney had an interest (independent of that of his client) in achieving the ends of the litigation or initiated the representation himself, whether the attorney was initially acting pro bono (such that a client might be aware that the attorney expected low or non-existent remuneration), and other returns (such as reputation, etc.) the attorney expected from the representation.

*Arbor Hill,* 522 F.3d at 184.

The Second Circuit further identified the frequently cited "Johnson factors" as relevant.

*Id.* at 117-18 (citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), abrogated on other grounds, by *Blanchard v. Bergeron*, 489 U.S. 87, 92-93, 109 S. Ct. 939, 944(1989)). These include the following 12 case-specific factors:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Arbor Hill*, 522 F.3d at 187, n.3 (citing *Johnson*, 488 F.2d at 717-19). The Second Circuit made clear, however, that the list of factors specifically identified in *Arbor Hill* is not exclusive, and that all of the case-specific variables for fee determination previously identified in the relevant jurisprudence may be considered in ascertaining what rate a reasonable paying client would pay.

*Id*. at 189. Applying the *Arbor Hill* standard in this case, the Court should grant the attorneys' fees requested by Plaintiff's Counsel.

### 1.   The time and labor required.

The Eastern District of Wisconsin has stated, "[W]hen it comes time for the court to award the fees, it must not penalize [Plaintiff]'s attorneys for responding to [Defendant]'s

defense. . . . Law is labor intensive; lawyers are paid for the diligence and the intelligence, commodities that cannot be mass produced on an assembly line." *Diettrich v. Northwest Airlines*, 967 F.Supp. 1132 (E.D.Wis. 1997) *rev'd on other grounds* 168 F.3d 961 (7th Cir. 1999). The "primary concern in evaluating a request for attorney fees is that the fee awarded be reasonable." *Paschal v. Flagstar Bank, FSB*, 297 F.3d 431, 433 (6th Cir. 2002) (internal quotes omitted).

At the outset of Kimmel & Silverman's representation of Plaintiff, his counsel notified Defendant via letter that he was handling this matter on March 13, 2012. Plaintiff's counsel then prepared a Complaint in this matter, which was later filed on October 24, 2012. *See* Docket Entry 1. Thereafter the parties actively litigated this matter. *See Id.* Defendant later provided its initial Offer of Judgment pursuant to F.R.C.P. 68 to Plaintiff, which Plaintiff then accepted on May 1, 2013. *See Docket Entry 12.*

The tasks performed on this matter were certainly both reasonable and necessary as Defendant showed no interest in resolving this matter early on and only made its Offer of Judgment once work had been done on the file. However, due to counsel's extensive experience handling FDCPA matters, the time performing such tasks on this file was minimal. For example, the preparation of the Complaint in this matter took a little less than two hours. *See* Exhibit "A".

It is clear that Plaintiff's counsel made efforts early on to contact Defendant by sending out initial correspondence to Defendant on March 13, 2012. *See* Exhibit "A". Plaintiff's counsel also utilized its knowledge and experience in the area of FDCPA litigation to keep time billed for necessary litigation tasks to a minimum. Hence, Plaintiff's counsel made efforts at all times to keep the time spent on this matter and the fees billed to this matter low and reasonable, and Plaintiff's counsel should not be penalized for having to litigate this matter.

> **2.** **The skill required to perform the legal services properly, and the experience, reputation and ability of the attorneys.**

Kimmel & Silverman, P.C. has been regularly recognized for its expertise in the area of consumer litigation. More than sixteen years ago the United States District Court for the Eastern District of Pennsylvania recognized that Mr. Kimmel and his firm possess a notable level of experience in the area of consumer protection litigation. *See, e.g., Stitsworth v. Ford Motor Company*, 1996 WL 67610 (E.D. Pa. 1996); *see also Posner v. Mitsubishi,* U.S.D.C., E.D. Pa. 95-CV-6099. More recently the United States District Court for the Eastern District of Pennsylvania noted counsel's "abundance of experience in the consumer law field." *See Brass v. NCO Financial Systems, Inc.*, 2011 WL 3862145 (E.D. Pa. July 22, 2011; Report and Recommendation adopted on August 31, 2011); *see also Alexander v. NCO Financial Systems, Inc.*, 2011 WL 2415156 (E.D. Pa. June 16, 2011) (recognizing Plaintiff's counsel's "high level of experience" and "reputation" in the field of consumer litigation"); and *Williams v. NCO Financial Systems, Inc.*, 2011 WL 1791099 (E.D. Pa. May 11, 2011) (same). Mr. Kimmel and his firm have only added to their achievements in the time since these opinions were written.

The Certifications of Craig Thor Kimmel, Amy L. Bennecoff, Tara L. Patterson, Suzanne M. Pontious and Joseph L. Gentilcore show that each is accomplished in the field of consumer litigation. *See* Exhibits "B," "C," "D," "E" and "F." Each has handled numerous FDPCA cases, as well as, other consumer related matters. Both Mr. Kimmel and Ms. Bennecoff have also been relied upon as a source for news publications and television programs due to their expertise in this area. It is their extensive knowledge in this area that led Plaintiff to retain Mr. Kimmel and his firm to handle this matter on his behalf.

**3.** **The customary fee for like work in the community.**

The hourly rate for each advocate is to be based on the **prevailing rate in the community for that individual's level of legal skill and experience**. *Blum v. Stenson*, 465 U.S. 886 (1984); *see also Cruz v. Local Union No.* 3, 34 F.3d at 1159 (2d Cir. 1994) (emphasis added). "In communities, the marketplace has set a value for the services of attorneys, and the

hourly rate charged by an attorney for his or her services will normally reflect the training, background, experience and skill of the individual attorney." *Blum v. Stenson*, 465 U.S. 886 (1984). The Seventh Circuit observed, with explicit reference to the FDCPA:

> In order to encourage able counsel to undertake FDCPA cases, as congress intended, it is necessary that counsel be awarded fees commensurate with those which they could obtain by taking other types of cases. As we noted in *Gusman v. Unisys Corp.,* 986 F.2d 1146, 1150 (7th Cir.1993),
>
> "Our recent cases have stressed that the best measure of the cost of an attorney's time is what that attorney could earn from paying clients. For a busy attorney, this is the standard hourly rate. If he were not representing this plaintiff in this case, the lawyer could sell the same time to someone else. That other person's willingness to pay establishes the market's valuation of the attorney's services."

*Tolentino v. Friedman*, 46 F. 3d 645, 652 (7th Cir. 1995). The Third Circuit similarly stated:

> Congress provided fee shifting to enhance enforcement of important civil rights, consumer-protection, and environmental policies. By providing competitive rates we assure that attorneys will take such cases, and hence increase the likelihood that the congressional policy of redressing public interest claims will be vindicated.

*Student Public Interest Research Group,* 842 F.2d 1436, 1449 (3d Cir. 1988).

The U.S. Supreme Court has stated: "The statute and legislative history establish that 'reasonable fees' under section 1988 are to be calculated according to the prevailing market rates in the relevant community, regardless of whether plaintiff is represented by private or non-profit counsel." *Blum,* 465 U.S. at 895 (footnote omitted).

Plaintiff's attorneys' fee request is within the prevailing market range in this type of representation. Affidavits of the plaintiff's attorney, along with rate determinations in other cases are satisfactory evidence of the prevailing market rate. *United Steelworkers of America v. Philips Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990). Here, Plaintiff submits the Declarations of Amy L. Bennecoff, Tara L. Patterson, Joseph L. Gentilcore, Suzanne M. Pontious and Craig Thor Kimmel who attest to the reasonableness of the fees sought by their firm in this matter. *See* Exhibits "B," "C," "D," "E" and "F. Further, Plaintiff cites to a litany of case law herein that supports the fee request.

When it comes to consumer claims, few plaintiff's counsel can say that their rates have never been reduced based upon those of the legal community where the action was brought. However, in this case, the rates of attorneys in this legal community are unquestionably among the highest in the United States. And Plaintiff's counsel has not increased its rates or those of its attorneys or staff to reflect the higher rates in New York legal community. In this way, Plaintiff has actually saved Defendant from paying higher fees and costs through the use of professional restraint and fair play.

The hourly rates that Plaintiff seeks to recover are reasonably comparable with those charged by lawyers of like skill, experience and/or reputation practicing in the Southern District of New York. *See, e.g.*, *Barile v. Allied Interstate*, *Inc.*, 12-CV-916-LAP-DF (S.D.N.Y. Jan. 30, 2013)[24] (Judge Freeman awarded rates of $300 per hour to Mr. Kimmel, $225 to Ms. Bennecoff, $200 to Mr. Kelleher, $100 to Mr. Ryan and $80 to Mr. Keltz in her Report and Recommendation, which was adopted by the Honorable Loretta A. Preska on March 4, 2013); *Ryan v. Allied Interstate, Inc.*, 12-CV-00526-AJP (N.Y.S.D. Aug. 9, 2012) (approving rates of $300 per hour for Mr. Kimmel, $225 per hour for Ms. Bennecoff, $100 per hour for Mr. Ryan, and $75 per hour for Mr. Keltz); *Henning v. Allied Interstate, Inc.*, 12-CV-01719-AJP (N.Y.S.D. Aug. 9, 2012); *Reith v. Allied Interstate, Inc.,* 12-CV-04278-PKC (N.Y.S.D. Nov. 8, 2012) (approving rates of $300 per hour for Mr. Kimmel, $225 per hour for a senior associate, $100 per hour for Mr. Ryan, and $75 per hour for Mr. Keltz); *see also Lagana v. Stephen Einstein & Associates, P.C. et al*, 1:10-cv-04456-KMW –GWG (S.D.N.Y. June 25, 2012) (Judge Wood found attorney William F. Horn's hourly rate of $425 to be reasonable in FDCPA action and also approved paralegal rate of $125 per hour and law clerk rate of $175 per hour), attached hereto as Exhibit "G"; *Mugavero v. Arms Acres, Inc.*, 03 CIV.05724 (PGG), 2010 WL 451045, *5 (S.D.N.Y. Feb. 9, 2010) (Judge Gardephe, citing to *Vilkhu v. City of N.Y.,* No. 06-CV-2095, 2009

---

[24] Judge Freeman issued a decision on twenty-six separate matters applying these rates.

WL 1851019 at *6, 9 (E.D.N.Y. June 26, 2009), found that "consistent 'precedent in the Southern District reveals that rates for experienced civil rights attorneys over the past ten years have ranged from $250 to $600, and that rates for associates have ranged from $200 to $350, with average awards increasing over time.'")[25]; *DeCurtis v. Upward Bound Intern, Inc.*, 09 Civ. 5378 (RJS), 2011 WL 4549412 (S.D.N.Y. Sep. 27, 2011) (Judge Sullivan, relying on the same, found rates of $550 for work performed by partner who graduated in 1995 and $275 for an associate who graduated in 2006); *VFS Financing, Inc. v. Pioneer Aviation, Inc.*, 08 Civ. 7655 (GBD) (AJP), 2009 WL 2447751, *4, *report and recommendation* (S.D.N.Y. August 11, 2009) (finding rates of $328 to $440 reasonable for attorneys in this District based on a review of decisions in this District[26] and well as the Court's own knowledge of prevailing rates)[27]; *Clark v. First Unum Life Insurance Co.*, No. 04 Civ. 9050 (LTS) (DFE), 2009 WL 1150318 (S.D.N.Y. April 29, 2009) (accepting hourly rates of $480 for partner with 24 years experience, $300 for associate with 5 years experience, and $150 for paralegals); *In re AOL Time Warner S'holder*

---

[25] The Honorable Paul G. Gardephe relied on several decisions in finding the rate he awarded to be reasonable in *Mugavero*. Judge Gardephe cited to: *Bernier v. Papagianopolous,* No. 99 Civ. 2000 (MHD), 2006 WL 2819590, at *1–2 (S.D.N.Y. Oct.2, 2006) (awarding $400 per hour in attorneys' fees to lead lawyer in § 1983 action); *Rainola v. Bratton,* No. 96 Civ. 4482(MHD), 2003 WL 1907865, at *6 (S.D.N.Y. Apr.21, 2003) (finding rate of $400 per hour reasonable for solo and small firm practitioners); and *Robinson v. City of New York*, 05 CIV. 9545 (GEL), 2009 WL 3109846, at *13 (S.D.N.Y. Sept. 29, 2009) (granting a request for attorneys' fees at a rate of $500 and $450 per hour for the two lead lawyers and rates between $425 to $ 185 for other lawyers involved in the case).

[26] The Honorable Andrew J. Peck relied on several decisions in finding these rates reasonable. Judge Peck cited to the following cases: *Vilkhu v. City of N.Y.,* No. 06-CV-2095, 2009 WL 1851019 at *6, 9 (E.D.N.Y. June 26, 2009) ($450 is a reasonable rate for New York City firm partner with 13 years of experience.); and *Verizon Directories Corp. v. AMCAR Transp. Corp.,* 05 Civ. 08867, 2008 WL 4891244 at *5 (S.D.N.Y. Nov. 12, 2008) (Daniels, D.J. & Ellis, M.J.) ($300 is a reasonable rate for New York City firm associate with "several years" of experience of "commercial litigation" and $425 and $525 are reasonable rates for New York City firm partners with "extensive experience in commercial litigation.").

[27] Notably, the fees that were determined to be reasonable by Judge Peck were those of Defendant's counsel in this matter, Reed Smith, LLP. Jason N. Kaplan, Esq. of Reed Smith, LLP's New York City office, billed at a rate of $448 per hour (for time billed in the years 2008 to 2009). *See* 1:08-cv-07655-GBD, docket entry 47-1, 47-2. It was noted in the Affidavit of Timothy S. Harris, Esq., offered in support of this request, that this rate was also discounted by 15% of Reed Smith's customary rates. *See* 1:08-cv-07655-GBD, docket entry 47. Mr. Kaplan graduated law school in 1995 and is a partner at Reed Smith LLP. Hence, Mr. Kaplan has less years experience than Mr. Kimmel, who bills at $425.00 per hour, and is also a partner with his firm. In the matter of *Amaprop Ltd. v. Indiabulls Fin. Services Ltd.*, 10 CIV. 1853 (PGG), 2011 WL 1002439 (S.D.N.Y. Mar. 16, 2011) *aff'd*, 11-1291-CV, 2012 WL 1889417 (2d Cir. May 25, 2012), the Honorable Paul G. Gardephe relied in part on fees sought and obtained by an adversary's counsel's firm in a prior matter in finding the fees sought reasonable.

*Derivative Litig.*, No. 02 Civ. 6302, 2009 U.S. Dist. LEXIS 124372 (S.D.N.Y. Nov. 9, 2009) (accepting hourly rates ranging from $90 to $250 for paralegals, from $175 to $550 for associates and other non-partner level attorneys and from $300 to $850 for partners, as within range of those commanded in the Southern District); *In re Marsh ERISA Litig.*, No. 04 Civ. 8157, 2010 U.S. Dist. LEXIS 8325 (S.D.N.Y. Jan. 29, 2010) (awarding fees equal to 33.3% of settlement fund, where percentage award reflected billing rates from $125 for administrative personnel to $775 for senior lawyers); *Nike, Inc. v. Top Brand Co.*, 00 CIV 8179 (KMW) (RLE), 2006 WL 2946472 (S.D.N.Y. Feb. 27, 2006) *report and recommendation adopted sub nom. Nike, Inc. v. Top Brand Co., Ltd.*, 00 CV 8179(KMW)(RLE), 2006 WL 2884437 (S.D.N.Y. Oct. 6, 2006) (awarding rates of $250 to $450 per hour for experienced counsel in 2006); and *Sidley Holding Corp, v. Ruderman*, 08 Civ. 2513 (WHP), 2010 WL 963416 (S.D.N.Y. March 15, 2012) (Judge Pauley affirmed and adopted Magistrate Dolinger's recommended rates of $600.00 per hour for partner and chair of department with over twenty years experience; "of counsel" with significant experience in area of law at a rate of $400 per hour; $250 per hour to an associate with four years experience; and $125.00 per hour to paralegal for work performed in Federal Court matter in Southern District of New York); *V.D.B. Pacific B.V. et. al. v. Chassman et. al.*, 09 Civ. 8081 (KBF) (DCF), 2012 WL 694025 (S.D.N.Y. March 5, 2012) (finding reasonable hourly rate of $450 per hour); *see also Steinberg v. Nationwide Mut. Ins. Co.*, 612 F. Supp. 2d 219, 224 (E.D.N.Y. 2009) (awarding prevailing attorneys billing rates of $585 to $790 for partners and $270 to $500 for associates)[28].

Plaintiff's counsel's proposed billing rates are also consistent with the market, particularly when prior awards are adjusted to reflect the overall increases in attorneys' hourly rates over time. *See, e.g., Robinson v. City of New York*, No. 05 Civ. 9545 (GEL), 2009 U.S. Dist. LEXIS 89981, at *13 (S.D.N.Y. Sept. 29, 2009) ("A review of precedent in the Southern

---

[28] The Second Circuit has recognized that hourly rates in the Eastern District are significantly lower than in the Southern District. *See Simmons v. N.Y. City Transit Authority*, 575 F. 3d 170 (2d Cir. 2009).

District reveals that rates awarded to experienced civil rights attorneys over the past ten years have ranged from $250 to $600, and that rates for associates have ranged from $200 to $350, with average awards increasing over time.") (citations omitted); *Rozell v. Ross-Holst*, 576 F. Supp. 2d 527, 546 (S.D.N.Y. 2008) (two years ago, awarding partner rates of $600 per hour for her experience in employment law); *Silberblatt v. Morgan Stanley*, No. 05 Civ. 7569 (PKC), 2007 U.S. Dist. LEXIS 85895, at *20-22 (S.D.N.Y. Nov. 19, 2007) (three years ago, approving reasonable hourly rate of $675 per hour for partners at an eight-attorney boutique firm, and noting court's history of approving fees in the $400-$555 per hour range); *Skold v. Am. Int'l Group*, No. 96 Civ. 7137 (HB), 1999 U.S. Dist. LEXIS 9209, at *21, 23 (S.D.N.Y. June 18, 1999), *aff'd*, 205 F.3d 1324 (2d Cir. 2000) (10 years ago, awarding $400 for partner overseeing employment discrimination litigation); *Bonner v. Guccione*, No. 94 Civ. 7735 (DLC), 1997 U.S. Dist. LEXIS 11382, at *23 (S.D.N.Y. Aug. 6, 1997), *vacated on other grounds*, 178 F.3d 581 (2d Cir. 1999) (13 years ago, noting partner rate of $400-$425 per hour in a sexual harassment and discrimination case); *Rodriguez ex rel. Kelly v. McLoughlin*, 84 F. Supp. 2d 417, 421 (S.D.N.Y. 1999) (11 years ago, awarding $425 for partner on civil rights case).

Paralegal rates charged by Kimmel & Silverman, P.C. ($80 - $100 in this matter) are also consistent with those awarded in cases in this District.  *See Amaprop Ltd. v. Indiabulls Fin. Services Ltd.*, 10 CIV. 1853 (PGG), 2011 WL 1002439 (S.D.N.Y. Mar. 16, 2011) *aff'd*, 11-1291-CV, 2012 WL 1889417 (2d Cir. May 25, 2012) (finding paralegal rate of $251 per hour reasonable in the Southern District of New York); *J.S. Nicol, Inc. v. Peking Handicraft, Inc.*, 2008 WL 4613752 at *16 (S.D.N.Y. Oct. 17, 2008) (Peck, M.J.) ("$150 per hour paralegal or litigation support rate ... is commonly accepted in this District."); *Trs. of Mason Tenders Dist. Council Welfare Fund v. Stevenson Contracting Corp.*, 2008 WL 3155122 at *11-12 (S.D.N.Y. June 19, 2008) (awarding legal fees for "litigation support staff" at rates of $140 to $150 per hour), *report & rec. adopted*, 2008 WL 2940517 at *3 (S.D.N.Y. July 29, 2008); *Hnot v. Willis*

*Group Holdings Ltd.,* 2008 WL 1166309 at *3 (S.D.N.Y. A pr. 2, 2008) ($150 per hour determined reasonable rate for paralegals); *Wise v. Kelly,* 2008 WL 482399 at *9-11 (S.D.N.Y. Feb. 21, 2008) (awarding legal fees for paralegal work at rate of $100 per hour); *Heng Chan v. Sung Yue Tung Corp.,* 2007 WL 1373118 at *5-6 (S.D.N.Y. May 8, 2007) (awarding $125 per hour to $150 per hour for legal assistances); *VFS Financing, Inc. supra.,* at *4, *report and recommendation* (S.D.N.Y. August 11, 2009) ($125 per hour found reasonable for paralegals n this District); *Sheehan v. Metro. Life Ins. Co.,* 450 F.Supp.2d 321, 328 (S.D.N.Y.2006) (awarding legal fees for paralegals at $150 per hour); *Morris v. Eversley,* 343 F.Supp.2d 234, 248 (S.D.N.Y.2004) (awarding $125 per hour for paralegals); *DeCurtis v. Upward Bound Intern, Inc.*, 09 Civ. 5378 (RJS), 2011 WL 4549412 (S.D.N.Y. Sep. 27, 2011) (Judge Sullivan found the rate requested of $100 to be reasonable); and *Sidley Holding Corp, v. Ruderman*, 08 Civ. 2513 (WHP), 2010 WL 963416 (S.D.N.Y. March 15, 2012) (Judge Pauley affirmed and adopted Magistrate Dolinger's recommended rate of $125.00 per hour to paralegal work performed in Federal Court matter in Southern District of New York).

### 4.    Whether the fee is fixed or contingent.

In a FDCPA case, such as the present one, the fee is contingent upon success of the case. In this private attorney general case, Congress encourages counsel to bring suit, recognizing that counsel cannot charge the client an hourly fee, because the fee may be out of proportion to the recovery. If contingent, the fee award should compensate counsel for the risk of receiving no compensation. *Blum,* 465 U.S. at 903; *see also Chalmers v. City of Los Angeles*, 796 F.2d 1205 (9th Cir. 1986), *citing Hensley*, 461 U.S. at 448 ("[t]he risks of not prevailing or not recovering any fees appear to be bases or exceptional circumstances which may justify an upward adjustment in rare cases. … In addition to the contingent nature of a fee arrangement, delay in payment of a fee may justify an increase in a fee award."). "Lawyers operating in the

marketplace can be expected to charge a higher hourly rate when their compensation is contingent on success than when they will be promptly paid, win or lose." *Blum* at 905.

### 5. The amount in question and the results obtained.

"[C]ourts generally will **not** look to the size of the damage award in determining a reasonable attorney's fee in consumer cases." *Smith v. Chapman*, 436 F. Supp. 58, 66 (W.D. Tex. 1977) (emphasis added). "[A]ttorney's fees awarded by district courts have 'frequently outrun the economic benefits ultimately obtained by successful litigants.'" *See Evans v. Jeff D.*, 475 U.S. 717, 735 (1986) (citation omitted). An attorney's fee award should not be reduced based on the amount of damages recovered. *City of Riverside,* 477 U.S. 561, 574 (1986). In *Yohay v. City of Alexandria Employees Credit Union*, 827 F.2d 967 (4th Cir. 1987), the Fourth Circuit addressed the issue of proportionality between the consumer's recovery and the amount of attorney's fees to be awarded in a Fair Credit Reporting Act case. In rejecting a claim that by the defendant urging proportionality, the Fourth Circuit stated:

> Proportionality of attorney's fees to the amount recovered is not required in every action brought pursuant to the FCRA. Since there will rarely be extensive damages in an FCRA action, requiring that attorney's fees be proportionate to the amount recovered would discourage vigorous enforcement of the Act. *Id.* at 974.

In *Yohay*, the Fourth Circuit cited the United States Supreme Court opinion in *Riverside v. Rivera*, *supra*. In *Riverside*, 106 S.Ct. at 2694, the Supreme Court stated:

> We reject the proposition that fee awards under (the Civil Rights Act) should be proportionate to the amount of damages a civil rights plaintiff actually recovers.

Following the Fourth Circuit's ruling that there is no requirement that there be proportionality between the amount of the consumer's recovery under Consumer Credit Protection Act statutes such as the Fair Credit Reporting Act and the amount of attorney's fees to be paid to the consumer's attorney for asserting rights under the Act, the Court has regularly applied the lodestar method to FDCPA actions in calculating fee awards, notwithstanding the sometimes smaller amount of the consumer's recovery. Compare, for example, the rulings on the merits in

*Withers v. Eveland,* 998 F. Supp. 942 (E.D. Va. 1997) ($1,000.00 in statutory damages awarded at summary judgment), to the fee awards granted, *Withers v. Eveland*, 997 F. Supp. 738, 740 (E.D. Va. 1998) (Full award of $5,605.00 requested in costs and attorney's fees); *Creighton v. Emporia Credit Service, Inc.*, 981 F. Supp. 411 (E.D. Va. 1997) ($750.00 awarded at summary judgment to each of two consumer plaintiffs in consolidated actions), *Creighton v. Emporia Credit Service, Inc.*, 1998 U.S. Dist. Lexis 6589 (E.D. Va., 1998) ($10,710.00 awarded as attorney's fees based on total request of $11,080.00); *Morgan v. Credit Adjustment Board*, 999 F. Supp. 803 (E.D.Va. 1998) ($300.00 awarded at summary judgment to each of two consumer plaintiffs in consolidated actions), *Morgan v. Credit Adjustment Board*, 1998 U.S. Dist. Lexis 8135 (E.D. Va. 1999) (Full award of $13,371.41 requested in costs and attorney's fees, including time spent litigating the fee petition[29]). With the natural increase that has occurred in market rates, the range between the merits recoveries and the fee awards in each of these cases would of course be even greater today.

"In the absence of any indication that Congress intended to adopt a strict rule that attorney's fees under section 1988 be proportionate to damages recovered, we decline to adopt such a rule ourselves." *City of Riverside* 477 U.S. at 581 (footnote omitted); s*ee also Quaration v. Tiffany & Co.*, 166 F.3d 422 (2d Cir. 1999); and *Zagorski v. Midwest Billing Services, Inc.*, 128 F.3d 1164 (7th Cir. 1997). The benefits to the public as a whole resulting from lawsuits which encourage compliance with statutory provisions are more important than relatively small damage awards. Indeed, when a provision for counsel fees is included in a regulatory act, it is recognition that enforcement of the statute would be unlikely if an individual had to pay his or her own attorney fees. The Supreme Court quoted Senator Tunney's remarks in the Congressional Record:

---

[29] An Amended Order awarding $1,200.00 for the additional time spent preparing a reply brief to the Defendant's Opposition to Plaintiffs' Motion for Attorney's Fees is not reflected in the Lexis opinion.

> If the citizen does not have the resources, his day in court is denied him; the congressional policy which he seeks to assert and vindicate goes unvindicated; and the entire nation, not just the individual citizen, suffers.

*City of Riverside*, 477 U.S. at 575 (citation omitted).

The Third Circuit amplified this thought stating:

> Congress provided fee shifting to enhance enforcement of important civil rights, consumer-protection, and environmental policies. By providing competitive rates we assure that attorneys will take such cases, and hence increase the likelihood that the congressional policy of redressing public interest claims will be vindicated.

*Student Public Interest Research,* 842 F.2d at 1449. "Congress has relied on such plaintiffs to act as private attorneys general." *Id.*, at 1450 n.13; *see also Graziano* 950 F. 2d at 113.

In this matter, Defendant offered judgment to be taken against it for $1,000.00, plus Plaintiff's reasonable attorney's fees and costs. This amount is the full amount of the statutory maximum, and is an excellent result. Hence, Plaintiff's counsel should be entitled to their full fees and costs.

### 6. Awards in similar cases.

Awards in similar cases have been addressed throughout this brief, but particularly in paragraphs II.C.4 and II.C.6, *supra*.

### D. A "REASONABLE PAYING CLIENT" WOULD PAY THE ATTORNEY'S FEES REQUESTED BY PLAINTIFF'S COUNSEL IN THIS CASE.

In light of the substantial time and resources expended by Plaintiff's counsel in this case, it is clear that Plaintiff benefited greatly from having skilled counsel with significant litigation experience and expertise in the area of consumer litigation prosecuting his claim. Because Plaintiff's counsel litigated this case on a contingency basis, without any guarantee of recovery, the attorney time expended on this case were hours that the firm's attorneys necessarily were unavailable to work on other, billable matters.

A reasonable paying client in Plaintiff's shoes, therefore, would certainly pay the fees requested by Plaintiff's counsel in this case (assuming the financial wherewithal to do so). *Cf.*

*Lochren v. County of Suffolk*, 344 Fed. Appx. 706, 709 (2d Cir. 2009) ("Current rates, rather than historical rates, should be applied in order to compensate for the delay in payment."). Moreover, based on the factors cited by the Second Circuit in *Arbor Hill* and other factors considered within the Second Circuit, the attorneys' fees requested by Plaintiff's counsel are reasonable and supported by the case law. Because the requested hourly rates are what a reasonable client would pay Kimmel & Silverman, P.C. when working on a billable hourly basis, the Court should grant the requested fee award in full.

### E.  PLAINTIFF SET FORTH AMOUNTS BILLED WITH SPECIFICITY.

To demonstrate its entitlement to fees, a party must submit "contemporaneous time records that describe with specificity, by attorney, the nature of the work done, the hour expended, and the dates on which the work was performed." *Morin v. Modern Cont'l Constr. Co.*, No. 07 Civ. 4815, 2009 U.S. Dist. LEXIS 72525, at *8 (E.D.N.Y. July 1, 2009) (citing *Cruz v. Local Union NO. 3*, 34 F.3d at 1160-61). Courts have consistently acknowledged, however, that there is no requirement that the party seeking attorneys' fees present extensive documentation "record[ing] in great detail how each minute of his time was expended." *Putnam Leasing Co. v. Fields*, No. 05 Civ. 141, 2007 U.S. Dist. LEXIS 58794, at *12 (E.D.N.Y. June 27, 2007).  Rather, the time records provided by the prevailing party need only provide sufficient detail to permit the court to accurately determine the reasonableness of the attorneys' fee application. *J.S. Nicol, Inc. v. Peking Handicraft, Inc.*, No. 03 Civ. 1548, 2008 U.S. Dist. LEXIS 82085, at *19-20 (S.D.N.Y. Oct. 17, 2008).

In the instant case, Plaintiff has furnished the Court with the detailed computerized time records contemporaneously recorded by the attorneys and paralegals who have provided legal services in connection with this litigation. *See* Exhibit "A".  Accordingly, Plaintiff has clearly satisfied the requirements for documenting the reasonable hours expended on this litigation.  *See, e.g., Auscape v. Nat'l Geographic Soc'y,* No. 02 Civ. 6441, 2003 U.S. Dist. LEXIS 13846, at *11

(S.D.N.Y. Aug. 8, 2003) ("[Plaintiff] has submitted a printout from what appears to be its counsels' billing software which contains all the required information. Such a submission clearly meets the evidentiary threshold for the recovery of attorneys' fees."); and *David v. Sullivan*, 777 F. Supp. 212, 223 (E.D.N.Y. 1991) ("Attorney affidavits which set forth all charges with the required specificity but which are reconstruction of the contemporaneous records . . . suffice to permit recovery of attorneys' fees").

### F.  PLAINTIFF IS ENTITLED TO ADDITIONAL FEES AND COSTS.

Plaintiff's Counsel is not limited to recovering attorneys' fees only on the work performed through judgment, and is also entitled to recover fees for the work done in preparing the instant attorneys' fee application.  *See Reiter v. Metro Transp. Auth. of N.Y.*, No. 01 Civ. 2762, 2007 U.S. Dist. LEXIS 71008, at *56 (S.D.N.Y. Sept. 26, 2007) ("It is settled that the time spent on a fee application is itself compensable.") (citing *Reed v. A.W. Lawrence & Co.*, 95 F.3d 1170, 1183-84 (2d Cir. 1996)). As the Second Circuit has explained in holding such time compensable:

> If an attorney is required to expend time litigating his fee claim, yet may not be compensated for that time, the attorney's effective rate for all the hours expended on the case will be correspondingly decreased . . . . Such a result would not comport with the purpose behind most statutory fee authorizations . . . the encouragement of attorneys to represent indigent clients and to act as private attorneys general in vindicating congressional policies.

*Gagne v. Maher*, 594 F.2d 336, 344 (2d Cir. 1979) (citations and quotations omitted), aff'd on other grounds, 448 U.S. 122 (1980).

Accordingly, the submitted time for preparing the fee submission is reasonable and should therefore be compensated.

### G.  PLAINTIFF REQUESTS REIMBURSEMENT FOR COSTS EXPENDED.

Rule 54 states that "[u]nless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party." *See*

Fed. R. Civ. P. 54(d)(1). Here Plaintiff seeks costs pursuant to Defendant's Offer of Judgment and Rule 54. *See* Docket Entry 12. Plaintiff seeks the filing fee of $615.00 in this matter, a fee of the court clerk for filing the Complaint ($350.00), a service fee ($65.00), and an amount relating to pro hac vice counsel ($200). *See* Exhibit "A".

### III.     <u>CONCLUSION</u>

Plaintiff respectfully requests this Court award his attorneys' fees in the amount of $3,353.00 and costs in the amount of $615.00 for a total of $3,698.00.

<br>

                     Respectfully submitted,
                     Kimmel & Silverman, P.C.

                     By: <u>/s/ Craig Thor Kimmel</u>
                         Craig Thor Kimmel
                         1001 6th Avenue, Suite 12
                         New York, NY 10018
                         Phone: (800) 668-3247
                         Email: kimmel@creditlaw.com
                         Attorney for Plaintiff, Jeanette Elledge

Dated: May 15, 2013